IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB
UNITED STATES OF AMERICA,

    Plaintiff,

v.
1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

**UNITED STATES' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY AND TO ORDER THE DEFENDANTS TO FILE A NEW EXPERT DISCLOSURE FOR NON-EXCLUDED TESTIMONY**

The government respectfully moves the Court to exclude certain portions of expert testimony. On May 14, 2021, the defendants identified eight expert witnesses and disclosed topics for their expected testimony, but that disclosure includes very few actual opinions or bases and reasons. On July 19, 2021, the defendants submitted a second letter to the government—styled as a supplement to the May 14 omnibus expert disclosure—in which they (1) notified the government they no longer intend to call four of the previously identified expert witnesses, (2) identified one additional expert witness, and (3) provided opinions for some (but not all) of their proposed experts.

The initial and supplemental disclosures, taken together, still substantially fall short of the Rule 16 and Rule 702 requirements. Therefore, the Court should exclude certain expert testimony and, with respect to non-excluded testimony, order the defendants to file additional expert disclosures that satisfy the requirements of Rule 16, Rule 702, *Daubert*, and *Kumho Tire*. And to the extent further disclosures are ordered, the government respectfully requests an opportunity to object to those disclosures, to move for exclusion of their testimony or for any other appropriate relief, and to identify any additional rebuttal expert witnesses.

## BACKGROUND

On October 6, 2020, a grand jury in this district returned a Superseding Indictment charging the defendants with one count of conspiring to restrain trade in violation of the Sherman Act, 15 U.S.C. § 1, and charging defendant Jimmie Little with making false statements in violation of 18 U.S.C. § 1001 and obstructing justice in violation of 18 U.S.C. § 1512(c)(2). *See* Superseding Indictment ("Sup. Ind.") ¶¶ 1-145 (Count 1), ¶¶ 146-149 (Count 2), ¶¶ 150-151 (Count 3), ECF No. 101. The Sherman Act charge alleges a *per se* unlawful conspiracy to rig bids and to fix, maintain, stabilize, and raise prices and other price-related terms for broiler chicken products sold in the United States.[1]

---

[1] We refer to this conduct as price fixing, a term which includes conspiracies to fix, maintain, stabilize, and raise prices and other price-related terms and to rig bids. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 (1940); *United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018).

## LEGAL STANDARD

**Rule 16.** Federal Rule of Criminal Procedure 16(b)(1)(C) provides that where a defendant has requested expert disclosure from the government, the defendant must himself provide to the government "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence." The Rule further provides that the disclosure must describe (1) the witness's opinions, (2) the bases and reasons for those opinions, and (3) the witness's qualifications. Fed. R. Crim. P. 16(b)(1)(C). The disclosure requirements are "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." 1993 Adv. Comm. Notes to Fed. R. Crim. P. 16. "If a party fails to comply with this rule, the court may . . . prohibit that party from introducing the undisclosed evidence; or . . . enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).

**Rule 702.** In exercising its "gatekeeping" function, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), the Court should exclude expert testimony that does not satisfy the requirements of the Federal Rules of Evidence. Specifically, expert testimony is only admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Moreover, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704.

**Rules 401, 402, & 403.** Expert testimony, like all other evidence, should also be excluded if it is irrelevant, Fed. R. Evid. 401, 402, or "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403; *see also Daubert*, 509 U.S. at 595.

***Per Se* Rule.** Under Section 1 of the Sherman Act, some "types" of restraints "are deemed unlawful *per se*," and thus these "categories of restraints" are treated "as necessarily illegal," which "eliminates the need to study the reasonableness of an individual restraint in light of the real market forces at work," *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). Price fixing is "the archetypal example" of a *per se* unlawful restraint. *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647, 100 S. Ct. 1925, 1927, 64 L. Ed. 2d 580 (1980); *Leegin*, 551 U.S. at 886 ("Restraints that are per se unlawful include horizontal agreements among competitors to fix prices."). Price-fixing conspiracies are "deemed to be unlawful in and of themselves," and thus are "illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958). Thus, the per se rule renders evidence about the market forces at work or business justifications irrelevant in a price-fixing prosecution.

4

Accordingly, because the indictment alleges that the defendants engaged in a price-fixing conspiracy, the conspiracy is unlawful without any further analysis of its reasonableness, economic justification, or other factors.

## **THE DEFENDANTS' EXPERT DISCLOSURE**

The defendants' two expert disclosures collectively identify five persons[2] from whom they plan to offer expert testimony in four fields: economics, the broiler chicken industry, forensics and statistics, and psychology, including memory, cognition, and false confessions.

I. **The Court Should Exclude Certain Opinion Testimony of the Defendants' Economic Expert, Professor Edward Snyder**

The defendants proffer Professor Edward A. Snyder, Ph.D. as an expert in industrial organization economics. The government objects to the following opinions of Prof. Snyder and moves for their exclusion on the grounds explained following each opinion.[3]

(1) "Professor Snyder is also expected to testify that the DOJ and antitrust economists have developed various indicia of price fixing and bid rigging, and to apply those indicia to alleged 'episodes' of collusion. Professor Snyder is

---

[2] The defendants initially identified three other individuals, Dr. Pierre Cremieux, Mr. Bruce Deal, and Dr. Sean Durkin, as potential economic experts. In their supplemental expert disclosure, the defendants represented that they will not call any of those three individuals to testify at trial. Ex. B at 1 n.1.

[3] The opinions listed are all drawn from the defendants' supplemental expert disclosure. In their initial disclosure, the defendants describe many opinions to which Prof. Snyder "may" testify. Ex. A at 17-20. Their supplemental disclosure, on the other hand, describes many opinions to which Prof. Snyder is "expected to" testify. Ex. B at 7-9. While the opinions in the initial disclosure almost entirely overlap with the opinions in the supplemental disclosure, they are not identical and the government interprets the supplemental disclosure to be a more refined and concrete version of the initial disclosure rather than as a supplement.

5

expected to testify that those economic indicia do not point to the existence of the conspiracy that the superseding indictment alleges." Ex. B at 7.

Grounds for Exclusion: Professor Snyder's opinion that "economic indicia do not point to the existence of the conspiracy [alleged]" is unsupported by adequate "bases and reasons" as required by Rule 16. The "bases and reasons" are simply not articulated beyond a citation to a 6-page Antitrust Primer, Ex. B at 7 n.2, intended for the general public published by the Department of Justice that explains antitrust crimes and provides subjective indicia of collusion.

The defendants' disclosures also do not explain:

- The specific indicia specifically he intends rely upon;
- How the indicia are measured;
- How the indicia relate to evidence of price fixing/bid rigging, etc.; and
- Additional sources, beyond the Primer, he relies upon, *e.g.*, an Antitrust Division guidance document, a published peer-reviewed paper, a textbook, etc.

In the absence of such details, at a minimum, the government is unable to evaluate the reliability of Professor Snyder's opinion and, most importantly, the Court is deprived of the ability to perform its gatekeeping function under *Daubert* and *Kumho Tire*.[4]

> (2) "Professor Snyder is expected to testify about the economic role that information exchanges—between and among buyers and suppliers—play in the broiler chicken industry, both generally and in the specific context of the alleged 'episodes' of collusion in the superseding indictment. Professor Snyder is expected to testify that such information exchanges can help buyers negotiate lower prices with some suppliers; improve suppliers' planning and investment; enable suppliers to mitigate risks and help ensure

---

[4] The Court should also exclude this testimony because its minimal probative value is substantially outweighed by the trial time required for Professor Snyder to provide direct examination about these indicia, and the time required for the government's cross examination. *See* Fed.R.Evid. 403.

the availability of steady supply to end consumers; facilitate cross-supplier transactions; and promote more informed decision-making by suppliers and buyers. Professor Snyder is expected to testify that for these reasons and others, such information exchanges would likely occur in the absence of any price-fixing or bid-rigging agreement." Ex. B at 8.

Grounds for Exclusion: Professor Snyder's opinion that "information exchanges" can be pro-competitive and otherwise beneficial, and therefore would occur in the absence of price fixing, is an impermissible attempt to inject irrelevant testimony into the trial. For *per se* illegal restraints—price fixing, bid rigging, market allocation—"the law does not permit an inquiry into their reasonableness" or "economic justification." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940). As the Tenth Circuit recently explained, defendants that are charged with *per se* antitrust offenses cannot extol a "restraint's salutary effect on competition and commerce" as a means of avoiding liability. *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1272 (10th Cir. 2018); *see also Law et al. v. Nat'l Collegiate Athletic Ass'n*, 134 F. 3d 1010, 1016 (10th Cir. 1998) ("Once a practice is identified as illegal *per se,* a court need not examine the practice's impact on the market or the procompetitive justifications for the practice advanced by a defendant before finding a violation of antitrust law").

Because the defendants are charged with price fixing, and because procompetitive justifications cannot be considered in a *per se* case, Professor Snyder's testimony and opinions along those lines would not "help the trier of fact," Fed. R. Evid. 702(a), would be irrelevant as unrelated to "a fact of consequence," Fed. R. Evid. 401, 402, and would confuse the jury, Fed. R. Evid. 403.

  (3) "Professor Snyder is expected to testify about the product sales at issue in the 'episodes' of alleged collusion and the economic implications of those

7

data, including as applied to the conspiracy allegations in the superseding indictment and in comparison to sales of other products during the relevant period. Professor Snyder is also expected to analyze the observed outcomes and data and **test for indications of supracompetitive pricing**. Professor Snyder is expected to **use standard economic benchmarking techniques, among others**, in support of his testimony on that topic. Professor Snyder is expected to testify that the outcomes related to the 'episodes' are not consistent with those that economists would expect to find in the presence of a price-fixing or bid-rigging agreements." Ex. B at 8 (emphasis added).

Grounds for Exclusion: Professor Snyder's conclusion that observed outcomes are "not consistent with those that economists would expect to find in the presence of a price-fixing or bid-rigging agreement[]" is unsupported by adequate "bases and reasons" required by Rule 16. The only hint the defendants provide as to the "bases and reasons" for that opinion is the vague assertion that Professor Snyder will "test for indications of supracompetitive pricing . . . us[ing] standard economic benchmarking techniques." But that is not particularly informative.

The importance of understanding the exact nature of Professor Snyder's "test" cannot be understated in the context of this case. Success of the conspiracy—though perhaps relevant to the existence of an agreement—is not an element of the crime, nor is the presence of supracompetitive pricing. Therefore there is great potential for this testimony to be irrelevant or its probative value to be substantially outweighed by juror confusion or undue prejudice. juror confusion is high. The gross inadequacy of defendants' disclosures stymies the assessment of his testimony. For example, the defendants' disclosures do not explain Professor Snyder's:

- Metric, *e.g.*, price-cost margin, "margin" from the contract, contract price, fob price, price per lb, etc.

- Comparison benchmark, *e.g.*, price in years before and after alleged episode, price across similar customers during episode, price compared to suppliers not included in episode to the same customer, etc.
- Controls, if any, *e.g.*, changes in supply and demand conditions, costs, etc.
- Statistical or other analytic framework, *e.g.*, test of difference in means, regression, etc.

In the absence of such details, at a minimum, the government is unable to evaluate the reliability and relevance of, or the potential for undue prejudice or juror confusion from, Professor Snyder's opinion and, most importantly, the Court is deprived of the ability to perform its gatekeeping function under *Daubert* and *Kumho Tire*.

(4) Professor Snyder is expected to testify about competitive dynamics in the broiler chicken industry, including but not limited to supply, demand, production cycles, industry structure, product differentiation and mix, supply and distribution chains, and the need for careful coordination across suppliers, growers, and buyers. Professor Snyder is also expected to testify about the characteristics of, and differences in, purchasing processes for broiler chicken products, including ongoing negotiations, contracting, matching, and information exchange between buyers and suppliers. Professor Snyder is also expected to testify about suppliers' optimizing behavior predicted by economic theory—profit-maximizing suppliers have an objective to optimize bid prices and volumes (a) across multiple buyers, (b) across different business segments, and (c) over time. Ex. B at 7-8.

Grounds for Exclusion: Defendants' disclosures of Professor Snyder's expected testimony on competitive dynamics fails to comply with Rule 16 because they provide no opinions, and no basis and reasons for the opinions. In addition, testimony regarding the competitive forces in any broiler chickens markets is not relevant in a prosecution for a price-fixing conspiracy. *See Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (explaining *per se* rule eliminates the need to study market forces). For this reason the testimony is excludable because it fails to assist the jury in

understanding the evidence, Fed.R.Evid. 702(a), and inadmissible under Fed.R.Evid. 401 and 403.

## II. The Court Should Exclude Defendants' Proposed Industry Expert: Paul Sinowitz

The defendants proffer Paul Sinowitz as an expert "in the wholesale chicken market." The defendants' initial and supplemental disclosures reveal that Mr. Sinowitz will testify: to certain needs and expectations of customers including RSCS, the purchasing cooperative for YUM! Brands; that chicken suppliers competed against one another except that Claxton was not a "true competitor," and that the suppliers often found larger birds more profitable to produce than smaller birds; and to his participation in developing a form of contract that contains a "most-favored nation" clause.

The Court should exclude Mr. Sinowitz from testifying except in the unlikely event he has personal knowledge of facts relevant to this case. According to defendants' disclosures he appears to have no such relevant information. He once worked for the RSCS purchasing cooperative though Defendants say that he departed the job in 2003, almost a decade prior to the earliest conspiratorial episode alleged in the Superseding Indictment. And Mr. Sinowitz now works for Qdoba Mexican Eats, which to date has not arisen significantly in this case (although could still be considered a victim).

To sidestep Mr. Sinowitz's lack of relevant personal knowledge and his resulting inability to testify meaningfully as a fact witness, Defendants attempt to cloak his testimony in the shroud of an expert. But to qualify as an expert under Federal Rules of Evidence 702(a), the witness must "help the trier of fact to understand the evidence or to determine a fact in issue." Mr. Sinowitz is unlikely to do that. Rather, Mr. Sinowitz

appears to be drawing on personal knowledge that is either antiquated (from 2003 or earlier) or from the perspective of a market participant not directly involved in this case (Qdoba). His personal knowledge is thus likely to confuse, rather than assist, the jury in understanding the relevant information, especially if wrapped up as the opinion of an expert.

Mr. Sinowitz's expected testimony largely reflects his conjecture rather than, as Federal Rule of Evidence 702(b) and (c) require, use of a reliable principle or method that is reliably applied to the facts of this case. Some conjecture relates to customers he has never worked for. For example, the defendants say that "Mr. Sinowitz is expected to offer the expert opinion that for poultry focused QSRs such as KFC, Popeyes, Church's and Chick-fil-A, the most important consideration was ensuring consistency and adequacy of supply, because if they did not have enough chicken, they had little else to sell." Ex. B at 4. But Mr. Sinowitz never worked at Popeye's, Church's, or Chick-fil-A, and yet he purports to have knowledge about those company's "most important" considerations.

Other conjecture is even further from removed from Mr. Sinowitz's experience purchasing chicken. The defendants' disclosures reveal that Mr. Sinowitz intends to speculate about the broiler chicken suppliers' states of mind. For example, he would testify that "the suppliers made independent decisions on pricing in order to compete for business," Ex. B at 4; and "[w]hen suppliers collected information about competitors, they were engaging in a customary competitive business practice - doing their due diligence so they could compete aggressively to win more business," Ex. B at 5. That is

simply more conjecture from Mr. Sinowitz, who has never worked for a broiler chicken supplier. The Court should exclude such opinions because they are not the product of using a reliable principle or method reliably to the facts of this case, as Federal Rule of Evidence 702(c) and (d) require.

Defendants' initial and supplemental disclosures both also fail to describe the basis and reasons for his opinions as Rule 16 requires. Because Defendants had two bites at the apple–and neither time complied with Rule 16–the Court should exclude Mr. Sinowitz's proposed expert testimony.

The Court should further exclude Mr. Sinowitz's testimony to the extent he provides opinions on the defendants' mental states, Fed. R. Evid. 704(b), or opines that conspiracy did not exist, *United States v. Mobile Materials*, 871 F.2d at 908. Also Mr. Sinowitz's opinion regarding Claxton, Ex. B at 6, should be excluded for the additional reason that such an argument is precluded as a matter of law. The Supreme Court has recognized that, for *per se* illegal restraints, like the price-fixing conspiracy charged in this case, a defendant "may be guilty of conspiring, although incapable of committing the objective offense." *Socony-Vacuum Oil Co.*, 310 U.S. at 224 n.59. Therefore, his testimony and opinions on this topic would not "help the trier of fact," Fed. R. Evid. 702(a), would be unrelated to "a fact of consequence," Fed. R. Evid. 401, 402, and would confuse the jury, Fed. R. Evid. 403.

### III. The Court Should Exclude the Proposed Testimony of the Defendants' Forensic and Statistics Experts, Joseph Pochron and Dr. Siyu Qing

The defendants proffer Joseph Pochron as a digital forensics expert, and Dr. Siyu "Charlie" Qing as an expert statistician. The defendants' initial disclosures reveal

that they expect Mr. Pochron to testify concerning the reliability, accuracy, completeness, and interpretation of the various types of digital device and telephonic records contained in the government's production to the defendants. According to the disclosures, the defendants expect Dr. Qing to testify to statistical analyses related to digital device and telephonic records contained in the government's production to the defendants.

The Court should exclude testimony from both witnesses because the defendants, in neither their initial disclosure nor their supplemental disclosure, "describe the witnesses's opinions," as Rule 16 requires. Instead, the defendants provide a list of topical areas the witnesses may cover in their respective testimony untethered to any discernible conclusions. Even if there are opinions hidden in the disclosures, the defendants fail to describe "the bases and reasons for those opinions," as Rule 16 also requires. Indeed, in this technical area, the adequacy of disclosures was all the more essential, so that the government could properly assess the forensic and statistical opinions by these persons and, as warranted, prepare a rebuttal witness. For example, if Mr. Pochron holds a forensic opinion that purports to call into question the integrity of some digital evidence, the defense was required to disclose that opinion and the basis for it so that the government would have had a chance to conduct its own forensic analysis. But the defense entirely failed to disclose any opinions or bases for them.

Furthermore, Mr. Pochron's expected testimony should be excluded to the extent he would offer his understanding of the substance of evidence collected from digital devices, *e.g.*, the content of text messages, especially if Mr. Pochron's expert opinion

13

pertains to the defendants' mental states, as "[t]hose matters are for the trier of fact alone." Fed. R. Evid. 704(b). Similarly, the Court should also exclude Dr. Qing's testimony to the extent that he would offer his understanding of the substance of evidence collected from digital devices, *e.g.*, the content of text messages, especially if Dr. Qing's expert opinion pertains to the defendants' mental states, as "[t]hose matters are for the trier of fact alone." Fed. R. Evid. 704(b).

### IV. The Court Should Exclude the Proposed Testimony of the Defendants' False Confessions Expert, Dr. Mark Chambers

The defendants proffer Dr. Chambers as an expert in clinical and forensic psychology. Their disclosure does not describe Dr. Chambers' opinions or the bases or reasons for those opinions. Instead, the disclosure identifies only three broad topics of Dr. Chambers' possible testimony: (1) memories can be erroneous, (2) people can begin to believe their false statements, and (3) people falsely confess. Taking those three topics together, the defendants essentially propose to offer Dr. Chambers to testify that witness' recollections of relevant events are false, witnesses have intentionally made false statements that have converted into false memories, and witnesses' confessions to participation in, and knowledge of, the charged conspiracy are fabricated. The defendants' complete lack of compliance with Rule 16 alone is a sufficient basis to exclude Dr. Chambers from testifying.

Further, Dr. Chambers' proposed testimony—regarding the credibility of witnesses—also fails Federal Rule of Evidence 702. Witness credibility is an inappropriate subject for expert testimony. As the Tenth Circuit has recognized: "the credibility of witnesses is generally not an appropriate subject for expert testimony."

*United States v. Adams*, 271 F.3d 1236, 1244-45 (10th Cir. 2001); *see also, e.g.*, *United States v. Phillipos*, 2017 WL 727550 (1st Cir. Feb. 24, 2017) (upholding trial court that excluded false confession expert testimony based on finding that there was "no indication that there is a body of reliable material that constitutes understanding in this area," and that "it would introduce the jury ... to a kind of faux science"). Moreover, testimony that opines on witness credibility is inadmissible under Federal Rule of Evidence 403: "permitting an expert to opine that prior confessions should essentially be disregarded because they are just as likely to be true as untrue substantially outweighs the testimony's minimal probative value." *United States v. Benally*, 541 F.3d 990 (10th Cir. 2008).

## CONCLUSION

For the reasons above, the Court should grant the government's motion.

DATED: July 26, 2021

Respectfully submitted,

/s/ Michael Koenig
MICHAEL KOENIG
HEATHER CALL
PAUL TORZILLI
CAROLYN SWEENEY
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 616-2165
michael.koenig@usdoj.gov
Attorneys for the Government

## CERTIFICATE OF SERVICE

I hereby certify that, on July 26, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered notices of appearance in this matter.

/s/ Michael Koenig
MICHAEL KOENIG
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 616-2165
michael.koenig@usdoj.gov
Attorney for the Government