IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.    RICKIE PATTERSON BLAKE,

      Defendants.

No. 20-cr-00152-PAB

PUBLIC VERSION

**DEFENDANTS' JOINT OPPOSITION TO THE GOVERNMENT'S OMNIBUS MOTIONS IN LIMINE**

Defendants, by and through undersigned counsel, respectfully submit this Joint Opposition to the Government's Omnibus Motions in Limine.

*Motion 1*. The government's position that it can "introduce evidence of harm from the defendants' conspiracy," but Defendants cannot show "lack of harm," is breathtaking. Mot. 2-3. It makes no sense that alleged evidence of harm is relevant to proving the charges, but evidence showing the absence of such harm is not relevant to defending them. It is a fundamental evidentiary tenet that "[w]hen a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005). And the Constitution is clear that Defendants have the right to confront and rebut the government's purported evidence of an unlawful agreement. *Richmond v. Embry*, 122 F.3d 866,

1

872 (10th Cir. 1997) ("the state may not arbitrarily deny a defendant the ability to present testimony that is relevant and material and vital to the defense" (quotations and alterations omitted)).

The government's position is also at odds with antitrust law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592 (1986) ("The alleged conspiracy's failure to achieve its ends in the two decades of its asserted operation is strong evidence that the conspiracy does not in fact exist."). That is why in *United States v. Usher*, a criminal price-fixing case, the court denied a similar motion in limine that sought to exclude "evidence of benefits [to customers] . . ., lack of harm, or other economic-based justifications." *See* Gov't's Mot. in Limine at 7, 1:17-cr-00019-RMB (S.D.N.Y. Aug. 3, 2018), ECF No. 116; Tr. 33:15-19 (Sept. 13, 2018), ECF No. 158. The court sided with the *Usher* defendants, who argued that "lack of effect evidence is admissible in *per se* cases to prove the absence of a price-fixing agreement." Defs.' Opp'n to Gov't's Mot. in Limine at 18, 1:17-cr-00019-RMB (S.D.N.Y. Aug. 13, 2018), ECF No. 124.

That the government intends to introduce evidence of "perceived" harm—harm customers "*would* experience *if* the defendants' price-increase demands were met," Mot. 3 (emphasis added)—rather than actual harm, makes its request all the more problematic. Antitrust law prohibits verdicts based on "speculation or guesswork." *Amerinet v. Xerox Corp.*, 972 F.2d 1483, 1497-98 (8th Cir. 1992); *see Yoder Bros., Inc. v. Cal.-Fla. Plant Corp.*, 537 F.2d 1347, 1371 (5th Cir. 1976), *cert. denied*, 429 U.S. 1094 (1977) (speculation insufficient to establish fact of damages in antitrust suit). That is especially true in the criminal context. The government's attempt to introduce subjective and speculative harm—while simultaneously prohibiting Defendants from introducing *actual* evidence showing lack of harm—is especially

egregious and should be rejected.[1]

The government also seeks to exclude defense evidence of "procompetitive justifications." Mot. 1-2. Specifically, the government claims that any evidence indicating competitors exchanged information to benefit customers or that prices were reasonable is irrelevant in a price fixing case. *Id*. at 2. To the extent the government is arguing only that defendants should not be allowed to offer justifications for price-fixing in a case governed by the current *per se* standard, Defendants agree.[2] However, the superseding indictment is replete with inferences that prices in one year were the result of price-fixing because they were higher than prices in the prior year. *See, e.g.*, Doc. 101 ¶¶ 47-143. Defendants are entitled to rebut this inference by showing that the prices were the result of market forces, independent decision-making, and the ordinary give-and-take of negotiations.

An inference of conspiracy is impermissible if a defendant's "conduct is consistent with other, equally plausible explanations." *Matsushita*, 475 U.S. at 596; *see Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1179-80 (10th Cir. 2019). Accordingly, evidence that purported

---

[1] Nor can the government rely on evidence of a customer's "perceived harm" to prove the *mens rea* of any Defendant to join or participate in an agreement to fix prices, a proposition for which the government offers no explanation or authority. Mot. 3. Indeed, such evidence would unduly prejudice the Defendants by "invit[ing] the jury to base their [] decision on speculation, and likely cause the jury to rule emotionally" against Defendants. *Martinez v. Cont'l Tire the Ams., LLC*, 476 F. Supp. 3d 1137, 1148-49 (D.N.M. 2020) (excluding prejudicial evidence).

[2] The government need not be concerned that Defendants will offer justifications for "price fixing" because Defendants contend that there was no agreement "fixing" prices. But, as the government has previously conceded, the law clearly permits evidence on whether an information exchange or a discussion of pricing is reasonable. *United States v. U.S. Gypsum Co.*, 438 U.S. 422 (1978); Doc. 415 at 12 n.5 ("*Gypsum* is a rule of reason case"). Defendants, moreover, have not conceded that *per se* rules are applicable, but either way, evidence about the absence of agreement is relevant.

information exchanges or pricing activity were the result of rational, independent decision making does not seek to excuse a proven conspiracy, but rather demonstrates the lack of an unlawful agreement in the first instance. This evidence is not only relevant, but central to rebutting the circumstantial evidence on which the government will rely at trial. *See, e.g.*, Doc. 395 at 5-9. Defendants are entitled to demonstrate that the facially innocuous conduct upon which this case is premised has "equally plausible" explanations. *Matsushita*, 475 U.S. at 596.[3]

This conclusion applies to expert evidence as well. Defendants are entitled to offer expert testimony demonstrating that the charged "behavior was completely consistent with the economic theory of competition in the marketplace." *United States v. Bestway Disposal Corp.*, 724 F. Supp. 62, 69 (W.D.N.Y. 1988); *see* Doc. 362 at 5-9 (collecting cases). Defendants addressed all of the government's conclusory and inaccurate claims about Professor Edward Snyder, their economic expert, and Mr. Paul Sinowitz, their industry expert, in prior briefing. Doc. 362 at 4-18. For the reasons explained there, the government misstates the law and mischaracterizes the expected expert testimony, all of which is probative and admissible. *Id.*

*Motion 2.* As discussed in prior briefing, Mr. Sinowitz's experience-based testimony is relevant and appropriate. *See* Doc. 362 at 13-18. In its second attempt at attacking Mr. Sinowitz, the government actually demonstrates why his testimony is both relevant and helpful. The government argues that any testimony about contracts Mr. Sinowitz developed is irrelevant since he left RSCS in 2003. Mot. 4. But to Defendants' knowledge, the terms of the Supplier Business

---

[3] The DOJ's attempt to exclude evidence of "procompetitive justifications" and "lack of harm" also suggests that it is worried about the rule of reason. Rightly so. As Defendants have explained, despite using the phrases "price fixing" and "*per se* offense," the specific conduct charged in this case reflects only the exchange of information, which is not *per se* illegal. *See, e.g.*, Doc. 308.

Relationship Agreement that Mr. Sinowitz negotiated, Doc. 542-01 at 5-6, were substantially in effect throughout the charged conspiracy period. Specifically, the "most favored nation" clause about which Mr. Sinowitz is expected to testify remained unchanged in RSCS's Supplier Business Relationship Agreement throughout. That the government highlights this agreement demonstrates how mistaken it is about the relevance of Mr. Sinowitz's testimony.

*Motion 3*. The government asks the Court to exclude as irrelevant any argument or evidence that Defendants had "procompetitive intentions," including any intentions to benefit customers, consumers, or markets generally. Mot. 5-6. As with Motion 1, the government mischaracterizes the likely evidence and ignores its own obligation to prove the existence of the illegal agreement it charged. As explained above, Defendants are entitled to introduce evidence demonstrating that the government has failed to meet its burden, including by demonstrating that the challenged actions were the result of independent decision making in response to customer needs, consumer demands, or market forces. *See In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015).

The government specifically asks the Court to exclude defense evidence about the reasons behind "small-bird" chicken pricing at each Defendant's employer. Mot. at 5-6. Remarkably, the government contends that "regardless of the actual state of what was happening" in the market, "[e]ven if true" that market forces were driving pricing decisions, and even though the government plans to offer its own interpretation of the conduct, Defendants cannot explain their respective employers' decisions. *Id*. It is a staggering claim and, if adopted, would deprive Defendants of essential evidence to contest an element of the charged offense— whether there was an unlawful agreement. *Supra* at 1-2; *Chambers v. Mississippi*, 410 U.S. 284,

302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."). Moreover, if it is "true" that the market forces were the cause of similar behavior by Defendants' employers, it would directly rebut any inference that the conduct was the result of an illegal agreement. The evidence is clearly relevant.

Finally, the government's suggestion that only *defense* evidence on this topic would confuse the jury and waste time is entirely unexplained and should be rejected on that ground alone. *United States v. Apperson*, 441 F.3d 1162, 1204 (10th Cir. 2006) (summarily asserting Rule 403 is insufficient). The contention is also wrong. The evidence goes directly to whether Defendants' actions were the result of an illegal agreement or independent decision-making—the foundational issue in this case and therefore not a confusing waste of time at all.

***Motion 4***. Federal Rule of Evidence 404 specifically provides that a defendant may adduce at trial "evidence of the defendant's pertinent trait." Federal Rule of Evidence 405 in turn governs how to prove that character. Defendants recognize that any character evidence must meet the requirements of Rule 404 and Rule 405, but the Court should not declare in a vacuum entire categories of undefined evidence inadmissible. It should instead assess any specific character evidence at trial and in context. Rules 404 and 405, moreover, do not provide a basis to exclude evidence that is relevant to an issue other than character. If the Government is seeking to categorically exclude for all purposes evidence that a Defendant was caring for a family member, engaged in religious or community service, or undertaking any of the other acts listed by the government, the Court should deny the government's request and rule on the admissibility of the evidence when the evidence can be considered in the context in which it is offered.

████████████████████████████████████████████





***Motion 6***.[7] The Government seeks to introduce evidence of Defendants' compensation and pay structures as evidence of motive. Mot 8. The Court should deny the request. As explained in Messrs. Lovette and Penn's motion in limine on this issue, evidence of their compensation is irrelevant and risks unfair prejudice. Doc. 524.

The government's motion underscores this point. It contends that the Court should admit evidence about Mr. Penn's bonus structure even though Pilgrim's Pride did not implement that bonus structure until May 2019, *after* the purported conspiracy ended in "early 2019" and *eight years after* Mr. Penn allegedly joined it. Doc. 542-3; Doc. 101 ¶ 1. The government's cases are also inapposite. *United States v. King*, for instance, has nothing to do with personal compensation or Sherman Act claims. 560 F.2d 122, 133 (2d Cir. 1977). In *United States v. Beachner Construction Co.*, the court neither considered the admissibility of compensation evidence nor discussed motive; it addressed only whether the district court properly dismissed an indictment on double jeopardy grounds. 729 F.2d 1278, 1280 (10th Cir. 1984). And in *United*

---

[7] This argument is only on behalf of Messrs. Lovette, Penn, Brady, and Fries.

*States v. Peake*, an out-of-circuit district court applied a highly deferential standard to conclude specific compensation evidence was properly admitted given the unique circumstances of that case. 143 F. Supp. 3d 1, 18 (D.P.R. 2013). The court appeared to acknowledge, however, that "said evidence's probative value is substantially outweighed by the dangers of unfair prejudice to the Defendant under FRE 403." *Id*.

In contrast, the government here declares without any support that its compensation evidence "would not be unfairly prejudicial." Mot. 8. This statement ignores reality and the law, which makes clear that "[e]vidence regarding a party's income is generally inadmissible, because it prejudices the jury against the party whose situation is being exposed." *SEC v. Goldstone*, 2016 WL 3654273, at *15 (D.N.M. June 13, 2016); *see* Doc. 524 at 4-6 (collecting cases). Indeed, compensation evidence "provokes an emotional response in the jury" and "affect[s] adversely the jury's attitude toward the defendant wholly apart from its judgment as to guilt or innocence of the crime charged," *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996) (quotations omitted); *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 445 F. Supp. 3d 1327, 1341-42 (D. Colo. 2020) (Brimmer, C.J.) (excluding profit evidence given undue prejudice).

Finally, the evidence also will confuse the issues, mislead the jury, and waste the Court's time with a series of mini-trials on compensation. Doc. 524 at 5-6. The government, for example, seeks to introduce Mr. Lovette's employment agreement. Mot. 8 (citing Ex. B). But that agreement indicates that various "objective and subjective performance factors" went into calculating his bonus each year, and that this determination was under the "exclusive authority" of the board of directors. Doc. 542-2 at 7. Mr. Lovette and other Defendants would need to

introduce rebuttal evidence regarding this independent, fact-intensive methodology for every year. *See United States v. Todd*, 108 F.3d 1329, 1333-34 (11th Cir. 1997) (reversing conviction because trial court precluded defendant from offering evidence "to combat the government's criminal intent argument that [the defendant] was motivated by greed and selfishness").

*Motion 7*. The government asks the Court to rule in a vacuum that the government is permitted to introduce, via Federal Rule of Evidence 1006, undisclosed summaries of "chicken supply contracts, business-related correspondence, and emails and text messages over the span of several years maintained by the defendants' employers, their customers, and phone utility providers." Mot. 10. The request should be denied. The government cannot use "summary" exhibits and witnesses to wade through thousands of documents, from hundreds of speakers, to create a narrative that fits their theory, and thereby deprive Defendants of their rights to confront witnesses against them. U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him"); *Crawford v. Washington*, 541 U.S. 36, 51 (2004).

The government cites Rule 1006, but ignores the burdens imposed by that Rule, which states that the party seeking to introduce a summary "must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." Fed. R. Evid. 1006. The evidence upon which a Rule 1006 summary is based must be admissible, *see United States v. Channon*, 881 F.3d 806, 810 (10th Cir. 2018); and where the summary is based upon hearsay, the proponent must establish that the materials are admissible under the hearsay rule, *see United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012).

Without seeing the alleged summaries and the records on which they are based, and without knowing whether that the purported summaries accurately reflect the underlying records, the Court cannot declare undisclosed summaries admissible. *See Id*.; *Reece v. AES Corp.*, 638 F. App'x. 755, 770-71 (10th Cir. 2016). The government cites no authority in which prospective Rule 1006 summaries were held to be admissible in limine in circumstances like this. *See United States v. Exec. Recycling, Inc.*, 2012 WL 6012701, at *6 (D. Colo. Dec. 2, 2012).

Finally, the government states that it intends to call summary witnesses to testify about "thousands" of disparate emails, phone calls, contracts, and negotiations over many years. *See* Mot. 9-10. But to use Rule 1006, the evidence must be the type "not conveniently examined in court." Here, the government fails to explain how or why the very evidence it presented to a Grand Jury on at least four separate occasions cannot be "conveniently examined in court." The Court cannot simply rule in a vacuum that these witnesses and their testimony about undisclosed summary exhibits are appropriate. Indeed, the Tenth Circuit has long been "reluctant to approve or condone" summary testimony, but especially when it seeks to summarize a large "mass" of statements that "are not connected" to one another. *United States v. Roberts*, 14 F.3d 502, 514 (10th Cir. 1993). Such testimony "undermine[s]" the factfinder's "ability to evaluate the [underlying statements] in context or even identify the speakers." *United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995); *see also United States v. Mendoza*, 236 F. App'x 371, 384 (10th Cir. 2007) ("summary witness" may "usurp[] the role of the jury").

The Confrontation Clause demands that Defendant have the opportunity to cross-examine the maker of any statement offered against them. Since the government has not presented to the Court or Defendants a summary for consideration, the Court cannot analyze the summary

pursuant to the Sixth Amendment or Rule 1006. *See Bullcoming v. New Mexico,* 564 U.S. 647 (2011). Further, a summary that allows the government to unnecessarily and unfairly summarize certain evidence, in effect, provides the government a second closing argument. The Court should deny the motion.[8]

**Motion 8**. The government asks the Court to admit Pilgrim's Pride's plea agreement into evidence if Defendants "call into question" the credibility of Robbie Bryant, a likely government witness. Mot. 11. As discussed above, there are many legitimate bases to doubt Mr. Bryant's credibility, truthfulness, and reliability. But impeaching Mr. Bryant's credibility is no reason to admit a guilty plea by Pilgrim's Pride, Mr. Bryant's employer. Mr. Bryant is not a party to the Pilgrim's Pride plea agreement nor is he named in it. He simply benefits, like nearly all other Pilgrim's employees, from his employer's negotiated resolution of the charges against it.

The only basis the government identifies for its request is that the plea agreement would purportedly demonstrate that Mr. Bryant has an obligation to tell the truth and that any benefits he derives from his employer's plea agreement do not depend on the outcome of the trial. Mot 11. Even if accurate, these propositions could be established without reference to or introduction of the Pilgrim's plea—the government could simply establish the fact that Mr. Bryant is testifying pursuant to an immunity agreement without any reference to his employer's plea. Courts often require as much. *See, e.g.*, Minutes at 3, *United States v. Lischewski*, 18-cr-00203 (N.D. Cal. Aug. 29, 2019), ECF No. 292 (refusing to admit or allow reference to a corporate plea agreement, but allowing government to "introduce fact that [witness] is testifying pursuant to a

---

[8] The use of Rule 1006 to enable case agents to testify about selectively created summary exhibits—thereby interpreting the evidence and purported "key events"—also violates Fed. R. Evid. 1003 by invading the province of the jury.

plea or [i]mmunity agreement, but no mention shall be made of a corporate plea by [employer]"). Any other approach would be highly prejudicial to Defendants, as explained in their motion in limine to exclude the Pilgrim's plea agreement. Doc. 530 at 3-6.

*Motion 9*. Consistent with the Federal Rules of Evidence and Tenth Circuit law, Defendants will propose jury instructions advising the jury that they should reach their verdict without considering potential penalties.

*Motion 10*. Defendants do not intend to argue or introduce evidence that customers or their representatives were complicit in the charged price fixing or bid rigging conspiracy. Defendants do plan to introduce evidence showing that there was no such agreement, and the conduct of customers and their representatives has relevance to that showing. For example, Defendants intend to introduce evidence that customers routinely shared pricing information among suppliers and that in some instances, customers instructed suppliers to align their pricing so they could provide consistently priced products to their franchisees and affiliates. Without greater specificity about what the government seeks to exclude, there is no further response that can be made on this argument right now. The Court should deny the motion.

*Motion 11*. The government seeks to exclude evidence related to the government's "deliberative processes and charging decisions"—vague terms to which Defendants cannot meaningfully respond. The government references in particular the "Antitrust Division's Leniency Program," the existence of which most Defendants contend should be excluded. However, if the government examines any witnesses at trial that benefit from Tyson's leniency application, and if it elicits any testimony regarding such benefits, then the evidence may be relevant. For example, should the government elicit from a Tyson employee under direct or

cross-examination that they have immunity from prosecution by virtue of Tyson's leniency application, the conditional terms of his or her immunity would be relevant. Those terms are dictated by the Antitrust Division's Leniency Program, and thus the Program would be directly at issue. *See* Doc. 538-2. For the avoidance of doubt, on either direct or cross examination, Defendants take the position that they may seek to elicit that a witness has a non-prosecution agreement with the government, the terms of which could chill that witness from providing testimony helpful to the defense and thus would bear upon credibility. This can be done without reference to the Leniency Program or Tyson's leniency application.

*Motion 12*. As discussed in Defendants' response to the government's motion to exclude Defendants' expert testimony, Dr. Chambers' opinions satisfy Federal Rules of Evidence 702 and 403. Doc. 362 at 20-23. The government's conclusory and unspecific assertion that his opinions are "unsupported" because they are accompanied by "no facts or data" is unpersuasive, not only because it is vague and imprecise, but also because it is untrue. On July 19, 2021, Defendants submitted expert disclosures, which included Dr. Chambers' qualifications, as well as his expected testimony and the fact that such testimony will be based on peer-reviewed studies and academic literature, as well as his review of memoranda of interviews and other materials in this case. Doc. 299-2 at 2-3. Accordingly, the Court should deny the government's motion in limine to exclude Dr. Chambers.

* * * * *

For the above reasons, the Court should deny the government's omnibus motions in limine.

Dated: October 5, 2021

Respectfully submitted,

s/ John A. Fagg, Jr.
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

s/ Richard K. Kornfeld
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

s/ Bryan Lavine
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

s/ James A. Backstrom
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

s/ Craig Allen Gillen
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

s/ Michael F. Tubach
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

s/ Michael S. Feldberg
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

s/ Elizabeth Prewitt
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

s/ Mark A. Byrne
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

s/ Barry J. Pollack
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2021, I electronically filed the foregoing Motion to Dismiss Superseding Indictment with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated: October 5, 2021

*s/ Michael F. Tubach*

Michael F. Tubach