IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

Criminal Case No. 20-cr-00152-PAB

[REDACTED]

**DEFENDANTS' JOINT OPPOSITION TO UNITED STATES'
OMNIBUS MOTIONS *IN LIMINE***

The government's Omnibus Motion *In Limine* contains five motions. The Court should deny all of them for the reasons set forth below.

## I.    Jury Nullification and Facts Not in Evidence.

### A.    Jury Nullification

DOJ moves to bar various opening and closing statements as "jury nullification." DOJ simply reprises its grievances from the first trial without showing that any defense counsel encouraged the "violation of a juror's oath to apply the law as instructed by the court" or asked the jurors to do anything other than "render a true verdict according to the law and the evidence." *See United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) (*cited with approval by Crease v.*

1

*McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999)).

At the first trial, DOJ objected to every opening statement "example" it cites, and this Court overruled the objections. Certified Transcript ("Tr."),[1] October 26, 2021, 106:9-23; *id.* at 127:17–128:14; Tr., October 27, 2021, 139:11-12, 140:9-11.

There is nothing in the record or the cases that DOJ cites that should cause the Court to revisit its rulings. Counsel for Mr. Little referenced his wife's disability and need for care because it was relevant to the pending obstruction charge that arose from his interview with the FBI. And cross-examination of Special Agents Taylor and Koppenhaver would have revealed that Mr. Little told them of his wife's disability and repeated need for care during the course of their interview. *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991), in which the defendant was barred from introducing evidence that he cared for his disabled son "in order to persuade the jury that [he] would never do anything to risk imprisonment thereby disabling himself from caring for the boy," *id.* at 1201, is inapposite. The other cases DOJ cites concern mentions of defendants' family members that are far more involved than a brief reference in an opening statement, like those challenged here. *Cf. United States v. Santana-Camacho*, 931 F.2d 966, 967-68 (1st Cir. 1991) (affirming exclusion of testimony of defendant's daughter regarding the fact that he had given her money and lived with her); *United States v. Lloyd*, 807 F.3d 1128, 1162-63 (9th Cir. 2015) (affirming exclusion of testimony as cumulative when defendant offered evidence of the impact of the birth of his daughter on his behavior). Similarly, *United States v.*

---

[1] Three versions of the transcript exist: (1) the rough transcript available from the LiveNote which the DOJ's appears to cite in its motion as "R. Tr."; (2) various official volumes prepared during the first trial; and (3) the recently prepared Certified Transcript. Defendants cite to the Certified Transcript unless specifically noted otherwise.

*Dochee*, No. 08-CR-108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009), does not limit

references to a defendant's lack of previous legal jeopardy in opening statements; rather, that

case involves a straightforward application of Rule 405.

DOJ's dislike of counsels' closing arguments, Dkt. 977 at 3, is similarly misplaced; each

"example" is perfectly appropriate. *United States v. Dickey*, 736 F.2d 571, 596 (10th Cir. 1984)

(when "both sides argue vigorously and aggressively," a closing argument "need not be confined

to such detached exposition as would be appropriate in a lecture," especially when the jury is

instructed that such arguments are not evidence). Here, the Court instructed the jurors that "[t]he

lawyers' statements and arguments are not evidence," Dkt. 921 at 6, and jurors are "presume[d]"

to "attend closely" to the Court's instructions. *United States v. Almaraz*, 306 F.3d 1031, 1037

(10th Cir. 2002). The Court will presumably so instruct again, mooting DOJ's concerns.

DOJ alleges that Defendants "inappropriately referenced punishment their clients may

receive, with repeated references to the charge as a felony and the consequence of prison." *Id.* In

the one identifiable example DOJ provided,[2] defense counsel's comment—that the government

wanted the jurors to make a snap judgment that would result in a felony conviction—was

appropriate. Dkt. 977 at 3 (citing "R. Tr. Dec 8 at 156:4-6"). Defendants can find no reference to

"prison" or "jail" in the record. And yet again, DOJ's cases do not support its position. *See*

*Shannon v. United States*, 512 U.S. 573, 579 (1994) (stating the jury should be instructed as the

Court did in Juror Instruction No. 28, Dkt. 921 at 33); *United States v. Parrish*, 925 F.2d 1293,

---

[2] Two of the listed examples do not cite to actual testimony, leaving Defendants unable to guess which portions of the transcript DOJ is referencing. *See* Dkt. 977 at 3 (citing to "R. Tr. Dec. 26 at 174, 182-184" and "R. Tr. Nov. 6 at 6:4-10," which were a Saturday and a Sunday, respectively).

3

1299 (10th Cir. 1991) (jury should not be informed of mandatory minimum sentences). Similarly, far from inviting the jury to speculate, Mr. Little's counsel explicitly told the jury *not* to speculate as to why DOJ dropped a charge, but instead properly noted that DOJ had broken its promise to show Mr. Little made false statements. *Cf. United States v. Reed*, 641 F.3d 992, 993 (8th Cir. 2011) (referring to charges the jury never heard about).

A review of the transcript does not reveal multiple examples of a "Golden Rule" argument, but rather a single passing statement, asking the jury to view the evidence separately from the perspective of each individual defendant in the context of a multi-defendant conspiracy case when, to convict, the evidence must show separately for each defendant how that defendant would have seen and understood the evidence. *See* Jury Instructions 12, 20 (Dkt. 921 at 14, 25). Defendants are aware of the "Golden Rule" prohibition and further Order of this court is neither necessary, nor ripe, unless repeated and with a contemporaneous objection.

Finally, DOJ claims that counsel's language concerning Mr. Roberts' indictment was inappropriate, Dkt. 977 at 3, but cites no law in support. *See Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955) ("[I]n the closing argument to a jury, the government attorney is an advocate, as is counsel for defense, and proper oratorical emphasis is denied to neither.").

**B.     Facts Not in Evidence**

Next, DOJ complains that Defendants referenced facts not in evidence, some of which were "plainly false." Dkt. 977 at 3. As to statements made in opening, when counsel have a good-faith basis to believe a fact will be admissible and offered at trial, they can refer to it in opening statements. *See Tietema v. Nat'l Oilwell Varco, Inc.*, No. 14-CV-39-SWS, 2015 WL 11108847, at *2 (D. Wyo. Jan. 21, 2015) (citing *Koch v. Koch Indus., Inc.*, 6 F.Supp.2d 1207,

1213 (D. Kan. 1998)).

The government also complains about questions that defense counsel asked on cross examination. Most of DOJ's cites to the record in this section, Dkt. 977 at 4, appear to be in error, and identifying the correct cites would require defense counsel to speculate. Rulings on the phrasing of questions and determinations of facts in evidence require the context of trial and are not appropriate subject matter for a motion *in limine*. *Cf. United States v. Tunkara*, 385 F. Supp. 2d 1119, 1121-22 (D. Kan. 2005) ("The better judicial practice is to defer rulings on relevancy and unfair prejudice objections until trial when the factual context is developed.").

Finally, DOJ's assertion that some of the statements at issue are "plainly false" is curious. If it were plain that certain statements were false, it should have been easy for DOJ to provide record citations demonstrating as much. It provided none. DOJ's motion is simply an attempt to prevent Defendants from properly contradicting its narrative. This attempt should be rejected.

## II.   References to First Trial

DOJ asserts that the "prejudicial effect" of referring to a prior trial "invariably outweighs any probative value," and asks for a blanket ruling forbidding such refences. Dkt. 977 at 5. The Court should deny DOJ's request as premature and overbroad.

To be sure, courts have prohibited references to a prior trial, but they do so based on the circumstances of the particular case. For example, the Tenth Circuit held in an unpublished opinion that such a prohibition "drew the line in about the right place," and that in any event, "[u]nder the facts and circumstances of [that] case . . . any possible error would be harmless error." *United States v. McAleer*, 221 F.3d 1353 *3 (10th Cir. 2000) (Table). In that case, defense counsel argued that he should be allowed to cross examine a government witness about her

allegedly untruthful prior testimony before a jury. *Id.* In affirming the trial court's rejection of the defendant's arguments, the Tenth Circuit distinguished the case before it from a case much closer to this one, in which "the distinction between 'proceeding' and 'trial' was not 'minimal.'" *Id.* n.4 (quoting *United States v. Giovanelli*, 945 F.2d 479, 493 (2d Cir. 1991)).

In *Giovanelli*, the "crux of the defense" was that "key government witnesses . . . had subtly refined their testimony at the various [prior] trials and proceedings." 945 F.2d at 488. One such witness failed to identify her alleged assailants in an initial police interview but did so in a later interview. *Id.* at 482-83. She also "rehearsed her testimony on dozens of occasions." *Id.* at 485. The defense crossed this witness on the "refining" of her testimony, and other key witnesses "on the reasons for their failure to come forward with damaging evidence in earlier proceedings." *Id.* The trial court forbade reference to the prior trial, permitting only what DOJ seeks here: references to a different "proceeding." *Id.* at 484. The Second Circuit held this was an abuse of discretion, explaining that the prohibition on references to the prior trial "present[ed] insurmountable obstacles to the defense." *Id.* at 488. On the facts of the *Giovanelli* case, "the ability to confront witnesses with their own prior statements, and to show that those statements had been made in a setting as solemn and dignified as the current trial, was of extreme importance to the defense." *Id.* at 488. The court held that the "defendants were entitled to demonstrate that [key government witnesses] had not merely altered or subtly refined their testimony after 'prior proceedings' but had done so after prior trials," and that "government witnesses had not simply refused to come forward during 'prior proceedings' but had failed to do so during two prior trials." *Id.* Recognizing the possibility of "unfair[ ] prejudice [to] either the government's or the defendant's case," *id.* at 487, the court held that, under the circumstances,

those concerns must yield to the right of effective cross-examination, the denial of which is

"constitutional error of the first magnitude." *Davis v. Alaska*, 415 U.S. 308, 318 (1974).

Here, as in *Giovanelli*, depriving Defendants of their ability to refer to the prior trial

could "present insurmountable obstacles" to effective cross-examination of key witnesses. 945

F.2d at 488. That determination is contingent upon the identity of DOJ's witnesses and the

substance of their testimony. In light of the roster churn of DOJ's witness list and repeated

"refinements" that key government witnesses have made to their testimony,[3] the Court will be

better served by making that decision at trial.[4]

## III.   Testimony of Cesar Urias

DOJ's motion seeking to exclude testimony from Mr. Urias about 

is premature. Currently,

Defendants do not anticipate eliciting such testimony from Mr. Urias. As discussed in detail in

Defendants' Motion to Reconsider Motion *in Limine* to Allow Cross-Examination of

---

[3] Both Robert "Robbie" Bryant and Carl Pepper—the former of whom testified at the first trial and the latter of whom did not—have "refined" their recollections of the events at issue over the course of many interviews. After DOJ put Mr. Pepper on its witness list, Defendants made a specific request for *Giglio* material related to him, which resulted in DOJ producing an interview memorandum for Mr. Pepper's thirteenth interview that had not been disclosed prior to the specific *Giglio* request. DOJ has not, to date, produced any offer of immunity to Mr. Pepper for testimony at the retrial.

[4] Defendants invoked the rule on excluding witnesses, Federal Rule of Evidence 615, at the first trial. Defendants have not revoked that invocation, and do not intend to do so. It would be impermissible for DOJ—in preparing any witness for the retrial—to disclose, in either words or substance, the testimony of any other witness from the first trial. *See United States v. Jimenez*, 780 F.2d 975, 980 & n.7 (11th Cir. 1986) ("[T]here is no merit in the government's attempt to distinguish prior trial testimony from current trial testimony. Reading prior trial testimony violates the [Rule 615 sequestration] order."); *Leidel v. Ameripride Services, Inc.*, 291 F. Supp. 2d 1241, 1247 (D. Kan. 2003). Defendants assume that DOJ will comply with this Rule and promptly disclose any deviations from it.

Government Witness Robert Bryant About Criminal Nature of His Prior Falsehoods, Defendants

seek to confront *Mr. Bryant* about his lies regarding ████████████ and his reasons for

providing favorable testimony for DOJ. Defendants do not seek to offer extrinsic evidence on

████████████████████████████████████████████████████ *See* Dkt.

953. Given that Mr. Bryant has yet to testify, DOJ's motion to determine the admissibility of Mr.

Urias's hypothetical testimony should be denied as premature.

DOJ also seeks to exclude *all* testimony by Mr. Urias absent a proffer from Defendants

on its relevance. A motion *in limine* is not a tool DOJ can use to smoke out defense theories and

strategies. Unsurprisingly, DOJ cites no authority requiring Defendants to proffer the relevance

of a potential witness's testimony. "[W]hether or not a party can establish foundation or

relevance of witness testimony is an issue to be properly addressed at trial." *Sunbelt Communs. v.*

*United States*, No. CV-S-99-1605, 2000 U.S. Dist. LEXIS 19325, at *5-6 (D. Nev. Dec. 18,

2000). Defendants' have a constitutional right to present a defense and call witnesses, and they

need not make that decision until after DOJ rests. This motion should be denied as premature.

## IV. Prior Rulings Excluding Evidence Related to Antitrust Trainings and Compliance Policies

DOJ asks the Court to overturn its prior rulings excluding evidence related to antitrust

trainings and compliance policies. Dkt. 977 at 6-10. The request underscores DOJ's consistent

efforts to confuse the jury and obtain convictions by claiming the sharing of confidential

information is "wrong," which is not an element of the charged offense or an accurate reflection

of the law. As this Court has already ruled—and as explained in further detail in certain

Defendants' motion *in limine* to exclude the very same evidence (Dkt. 978-1)—the fact of an

antitrust training has little (if any) relevance that would not be substantially outweighed by the

danger of undue prejudice. *See* Tr., Nov. 18, 2021 at 3551:10-16.[5] And this Court already ruled, unequivocally, on the issue of company compliance policies. It excluded the policies because their guidance is not the "standard[] by which the jury will need to assess the charge in this case." Dkt. 603 at 7. Yet despite the Court's clear directives on these issues, DOJ continues to relitigate the same arguments the Court has already heard and rejected. There are no changed circumstances, manifest injustices, or new evidence not previously available to the government that tips the scales in favor of reconsideration.

      To start, DOJ does not even attempt to offer testimony or evidence that could pass as "new" with respect to company compliance policies. Instead, it regurgitates the same failed arguments about their supposed relevance. *Compare* Dkt. 977 at 6-10 *with* Dkt. 565 at 10-11. DOJ contends that GX-9865—a purported compliance policy from Pilgrim's Pride that is undated and prominently marked "TBD – DRAFT"—"was not known to the government until January 14, 2022," and therefore should be admitted. Dkt. 977 at 7 n.4. The claim is meritless. The document was in DOJ's possession well before the first trial and produced to Defendants nearly five months before the first trial began. *See* Ex. A, June 8, 2021 Production Letter from M. Koenig & Appx. A (Bates range encompassing GX-9865 (PILGRIMS-DOJ-0002916975)). A lack of diligence is not a changed circumstance warranting reconsideration. Nor does it permit DOJ to circumvent the Court's unambiguous holding that Pilgrim's' interpretation of compliance

---

[5] DOJ cites to the Court's October 7, 2020 Order refusing to exclude antitrust training materials to support its assertion that this Court found such evidence "proper and relevant," but the Court explicitly overruled that ruling from the bench on November 18, 2021, a fact DOJ omits. *See id.* at 3452:23-24 ("I always have the freedom to overrule myself and I am actually going to do that in this particular instance...").

obligations and Defendants' review or awareness of those policies are (1) likely to mislead the jury and (2) have no bearing on whether Defendants violated the Sherman Act. *See* Dkt. 527 at 3-5; Dkt. 603 at 7.[6] The Court's rationale for excluding compliance policies, *see* Dkt. 603 at 7, is even more salient in evaluating the admissibility of a purported draft policy such as GX-9865.

DOJ's suggestion that it is appropriate for new witnesses to "reveal defendants' attendance at trainings [and] describe the high-level contents of such trainings and policies" is as untrue as it is irrelevant. Limiting the testimony of DOJ's unidentified witness to a description of "the high-level contents" of antitrust policies does not render such policies relevant to Defendants' criminal liability, nor does it mitigate the unfair prejudice that would result.[7] DOJ's "anticipated testimony" with respect to Tyson's antitrust training in particular may confirm Tyson's process of tracking attendees and the general content of some trainings, but no witness will testify on the basis of firsthand knowledge that Messrs. Roberts or Mulrenin attended them. Nor will any testimony or evidence show what was presented at any respective trainings.

Even if DOJ *were* able to proffer testimony at trial sufficient to establish Defendants' attendance at antitrust trainings and the precise content of the same, it would fail to justify reconsideration. As an initial matter, DOJ offers no explanation why its witnesses—who remain unidentified with respect to Pilgrim's[8]—could not have been called at the first trial. Witness

---

[6] Although GX-9865 is the only Pilgrim's document identified in DOJ's motion, DOJ's failure to offer any basis to reconsider the Court's prior ruling and admit the document applies equally to similar documents on its exhibit list, including GX-3034, GX-3040, and GX-3041.

[7] DOJ refers generally to "defendants' attendance at trainings," but it fails to identify a single anticipated document or witness testimony that would demonstrate any of the former Pilgrim's employee Defendants received any such training during the charged conspiracy period.

[8] The government states that it "*anticipates* that one witness will testify to defendants Penn's and Lovette's review and approval of GX 9865." Dkt. 977 at 7 (emphasis added). Effectively seeking

testimony that was previously available to the government at the first trial is not a "changed circumstance" pursuant to which the Court should reexamine its prior rulings. *See United States v. Neumann,* 867 F.2d 1102, 1107 (8th Cir. 1989) (Arnold, J., concurring) ("Unless circumstances have changed, either by way of the discovery of new evidence or by way of a change in the controlling law, or unless the context in which the evidence was expected to be offered is somehow different from what it appeared to be at the time of the suppression . . . [reconsideration] makes absolutely no sense.").

Second, and perhaps most importantly, the Court's decisions to exclude evidence about antitrust training and compliance policies were not based upon whether DOJ could show that Defendants attended such trainings or due to a lack of information regarding their content. For that reason, any "new" evidence or testimony regarding the contents of a company's antitrust materials simply adds to the prejudice the Court already identified as the basis for exclusion. DOJ appears not to grasp that the Court based its rulings on this evidence having very little (if any) relevance, which is vastly outweighed by the prejudice and jury confusion it would cause. *See* Dkt. 603 at 7; Tr., Nov. 18, 2021 at 3551:10-16 ("[E]ven though *we now know what the contents of [the training] would be*, it would be very difficult to display that because . . . it would be very problematic in terms of the jury being informed of the law in that regard. And *I don't think that the fact of the training itself [] has a relevance that [] wouldn't be substantially*

---

an advisory opinion, DOJ has not identified a witness affiliated with this document on its exhibit list (and the exhibit appears on its Notice of Exhibits Without a Testifying Witness filed January 14, 2022). *See* Dkts. 935 at 278, 937-1 at 5. Defendants' have not received any witness interview conducted around January 14, 2022 that touches on Pilgrim's' antitrust policy.

*outweighed by the danger of undue prejudice*.") (emphasis added).

Instead of explaining why that reasoning merits reconsideration, DOJ resorts to citing case law on the admission of legal opinion testimony. Every case it cites is irrelevant. As a threshold matter, *Gomez v. Rodriguez,* 344 F.3d 103 (1st Cir. 2003) and *Vazquez-Valentin v. Santiago-Diaz*, 459 F.3d 144 (1st Cir. 2006), are a pair of civil cases from the First Circuit with an entirely different standard of proof. Further, in *Gomez*, the court permitted limited non-expert legal opinion testimony because the witness had provided advice to a defendant regarding the ultimate issue in the case, and because the witness was a "direct participant in the events at issue." *Gomez*, 344 F.3d at 113; *see also id.* at 114 ("The fact that [the witness] was a percipient witness makes a world of a difference."). Further, *none* of the cases that DOJ cites involved evidence offered to "demonstrate" that a defendant had knowledge that his conduct was "wrong," or dealt with internal corporate policies on antitrust law or policy. In each of DOJ's cases, the evidence admitted was critical to an element of the claim or charged offense. *See Vazquez-Valentin*, 459 F.3d at 151-52 (the trial court erroneously excluded audit records and other documents that offered an explanation for the "personnel actions undertaken by the defendants" and which were "crucial to the defendants' case"); *United States v. Hobbs*, 190 F. App'x 313, 316-17 (4th Cir. 2006) (affirming district court's decision permitting witness to testify to his "understanding" with defendants to "try and scare" victims); *United States v. West*, 2000 WL 1106038 at *3 (6th Cir. July 10, 2000) (unpublished opinion) (admitting witness testimony that was relevant to prove the defendant did not rely on information provided by a third-party to file false tax returns). That is plainly not the case here.

DOJ repeats what it unsuccessfully argued at the first trial: that the relevance of the

compliance evidence outweighs its (virtually certain) prejudice, because it "demonstrates that when defendants engaged in the illegal conspiracy, they did so knowing that (1) what they were doing was wrong, and (2) their employers', competitors', and customers' prices were confidential and sacred." Dkt. 976-1 at 9. But whether pricing information is confidential or "sacred" is irrelevant. As the Court recognized in excluding confidentiality agreements at trial, the fact that there may be a breach of confidentiality would very likely confuse the jury about the relevant issue: "[…W]e're talking about the Sherman Act, not confidentiality agreements." Tr., Nov. 15, 2021 at 2892:13-21.

That Defendants' employers maintained antitrust compliance polices or antitrust training—and the contents of those materials—is similarly irrelevant. "'[T]he knowledge requisite' to a 'knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'" *United States v. Kaspereit*, 994 F.3d 1202, 1208 (10th Cir. 2021) (quoting *Bryan v. United States*, 524 U.S. 184, 192 (1998)). The Sherman Act contains "no indication that 'knowledge of the law defining the offense [is] an element of the offense.'" *Liparota v. United States*, 471 U.S. 419, 439 (1985) (internal quotation omitted).

Finally, DOJ's admission that it is seeking to introduce this evidence to show that Defendants knowingly did something "wrong" is precisely why the Court should exclude it. First, DOJ itself argued that evidence pertaining to good faith is irrelevant in a *per se* case. *See* Dkt. 542 at 1-2 (seeking to preclude Defendants from admitting evidence of "justifications for the conspiracy" on the basis of its irrelevance). It cannot now reverse course as soon as it becomes convenient. Second, characterizing conduct as wrongful risks confusing jurors about the elements of the charged offense with a vague and subjective standard of morality. *See*

*generally* Dkt. 963-1.

In sum, there is every reason for the Court to adhere to its prior rulings. It should deny DOJ's request to offer testimony and documents relating to Tyson Foods and Pilgrim Pride's antitrust training and compliance policies.[9]

## V.  Testimony from SAs Koppenhaver and Taylor

DOJ seeks to offer the testimony of Special Agents Matthew Koppenhaver and LaNard Taylor on a variety of questionable subjects, purportedly "based on their personal knowledge." Dkt. 977 at 10. Excepting certain testimony about the basics of DOJ's investigation, *see infra* Section B, DOJ's request is nothing more than a request for reconsideration of this Court's prior rulings regarding overview and summary testimony. *See* Dkt. 604 at 4; *see also* Trial Tr. (Vol. 7) at 1383:22-25, 1384-87; *id.* (Vol. 8) at 1624:5-25, 1625:1-11, 1626:5-25, 1627, 1628:1-11, 1629:6-25, 1630:1-22; Nov. 23, 2021 Rough Tr. at 123:8-25 through 125:1-23. The Court should exclude the agents' proposed testimony.[10]

### A.  DOJ Waived the Option to Call SA Koppenhaver Because He Is Not on Its Witness List.

DOJ indicates that it will call SA Koppenhaver "to provide brief introductory testimony

---

[9] DOJ's argument that in the alternative, Rule 403's balancing test "applies statement by statement," is inapposite. Any portions of the proffered exhibits or testimony that could reasonably be deemed relevant are inadmissible, and therefore all related evidence should be excluded in full.

[10] Defendants previously objected to and filed thorough briefing on abusive overview and summary testimony. *See* Dkts. 782, 658. The Court did not rule on or terminate Defendants' written objections; instead, DOJ withdrew its agents as witnesses during the first trial. Defendants renew this objection and refer the Court to their November 3, 2021 filing for additional argument and citation to authorities, while it addresses the government's specific claims from its Omnibus Motion *in Limine* here.

towards the beginning of trial." Dkt. 977 at 10. SA Koppenhaver is not on DOJ's witness list that the Court ordered the parties to file on January 14, 2022. Dkt. 925. DOJ's current list includes only SA Taylor, who it represented would be its leadoff witness for approximately eight hours. Dkt. 936.[11] DOJ offers no excuse for omitting SA Koppenhaver from its witness list, particularly when they disclosed him as a witness for the first trial. Dkt. 590. The Court need not, and should not, permit DOJ to flout its orders and deadlines with impunity. Dkt. 977 at 7 n.4 (reflecting that DOJ intends to ignore the January 14, 2022 deadline by filing forthcoming exhibit and witness lists).

## B.     If Permitted At All, "Introductory Testimony" Must Be Circumscribed.

Defendants acknowledge that limited testimony about the origin of an investigation based on the news, serving subpoenas, collecting documents, obtaining toll records, and conducting interviews can be appropriate.[12] Dkt. 977 at 10-11. But if SA Koppenhaver is allowed to testify at all, that is where his testimony must begin and end—he should not be permitted to explain how he and others "probe[d] into whether there was any evidence of bid rigging or price fixing" or offer vague "first-hand observations."[13] Dkt. 977 at 11, 12. *United States v. Brooks*, 736 F.3d

---

[11] According to DOJ's Omnibus Motion *in Limine*, it now envisions SA Taylor providing "concluding testimony" somewhere "[t]owards the end of trial." Dkt. 977 at 12.

[12] Defendants object to any testimony regarding the execution of search warrants. *See* Dkt. 961 (Defs.' Joint Mot. in *Limine* To Exclude Certain Test. of Special Agent LaNard Taylor).

[13] It is unclear how any agent in this case has any relevant "personal knowledge" or "first-hand observations," given the bulk of the government's investigation here occurred *after* charges were brought. *See, e.g.*, *United States v. Moore*, 651 F.3d 30, 61 (D.C. Cir. 2011) (holding that the government may call as its first witness a law enforcement officer who is familiar with *pre-indictment* investigation). Neither SA Taylor nor Koppenhaver personally perceived *any* conduct related to the charged conspiracy or any Defendant's conduct in purportedly joining and implementing it.

921, 930-31 (10th Cir. 2013). The Court ruled unequivocally that agents cannot offer testimony on "(1) whether a conspiracy existed, including whether price-sharing between competitors should be considered 'price fixing,' (2) whether any defendant or other person knowingly joined and participated in a conspiracy, and (3) the meaning of a defendant's conduct or communications." Dkt. 604 at 4.

To the extent Defendants can discern what else DOJ intends to elicit from SA Koppenhaver given its cryptic descriptions, the Court should exclude it as irrelevant, hearsay-laden, inadmissible lay opinion testimony that infringes upon Defendants' confrontation and due process rights. For example,

- *SA Koppenhaver "will orient the jury as to the types of industry participants interviewed" and the "types of evidence collected."* Dkt. 977 at 11. DOJ has conducted wide-ranging interviews in this case and collected more than 15 million documents. Although SA Koppenhaver certainly can identify who he interviewed, any characterization of groups of participants and/or explanation as to why they were interviewed risks improperly (1) eliciting hearsay and irrelevant testimony about uncharged conduct beyond the scope of the indictment; and (2) injecting SA Koppenhaver's beliefs about the existence of a conspiracy and/or the credibility or strength of certain evidence. *See* Dkt. 604 at 4; *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013) ("Other potential problems [with overview testimony] include the government's ability (1) to spin the evidence in its favor before it is admitted (assuming it is ever admitted), (2) to give its official imprimatur to certain evidence and (3) to allow its witnesses (usually law enforcement) to testimony on matters about which they have no personal knowledge based on hearsay."). Further, the factual evidence will speak for itself; SA Koppenhaver should not be permitted to describe anything. *See United States v. Griffin,* 324 F.3d 330, 349 (5th Cir. 2003) ("Allowing that kind of testimony would greatly increase the danger that a jury might rely upon the alleged facts in the [overview] as if [those] facts had already been proved.")

- *SA Koppenhaver will explain "how evidence was searched for inter-competitor communications and for pricing events that could have provided an opportunity for price fixing and bid rigging."* Dkt. 977 at 11. In plain language, SA Koppenhaver appears to be ready to discuss the use of search terms and date filtering. Agents' use of searches for Defendants' and their companies' names is neither surprising nor a proper subject of lay witness testimony under Fed. R. Evid. 701. General knowledge

that computers are able to perform searches is not open to debate in 2022. SA Koppenhaver should not be permitted to offer testimony about "jargon" or "keywords"—here, ordinary words used in everyday business—that he and the government may believe are indicative of an antitrust conspiracy. Dkt. 604 at 4. Nor should he be permitted to offer lay opinions that amount to speculative conclusions, like whether there was "an opportunity for price fixing and bid rigging" during a given time. Dkt. 977 at 11. The jury is just as capable as SA Koppenhaver of understanding syntax and drawing inferences from documents.

Moreover, regardless of whether this type of testimony satisfies Rule 701, the Court already has ruled that the government may not elicit testimony from any agent or employee about *the relevance* of certain timeframes or, as described here, "pricing events." Trial Tr. (Vol. 7) 1385-86.

- ***SA Koppenhaver will testify as to "why he viewed investigative steps . . . as appropriate***.*"* Dkt. 977 at 12. The "appropriateness" of whatever steps SA Koppenhaver might testify about is irrelevant to any fact in issue and is argumentative. *Moore*, 651 F.3d at 61 (in a case in which the government relied almost exclusively on co-conspirator cooperators' testimony, recognizing that the government "understandably might seek at the outset to enhance its case in the jury's mind with the imprimatur of an FBI agent," but holding that such an agent may not "present lay opinion testimony about investigative techniques in general and opine on what generally works and what does not"), *as cited in Brooks*, 736 F.3d at 931 n.2. Further, the government cannot preemptively rehabilitate its deficient investigation. Dkt. 977 at 12 n.6.

The purported scope of SA Koppenhaver's testimony, as described in DOJ's Omnibus Motion, is a pretext to subject the jury to the government's argumentative narrative of wrongdoing. The Court should not allow DOJ to use him as a vehicle for that narrative.

### C.    Special Agent Taylor's "Concluding Testimony" Should Be Excluded.

According to DOJ, SA Taylor "will focus on explaining how investigative steps led to the creation of the government's summary exhibits," somewhere "towards the end of trial," and "use specific exhibits . . . to explain how he and others used keyword searches" to identify e-mails and text messages for those summaries. *Id.*

First, SA Taylor's anticipated testimony ("investigative steps," including using "keyword

searches for things such as competitor names . . . and following review of those communications[,] he and others searched phone records") is duplicative of SA Koppenhaver's anticipated testimony ("the process of reviewing the evidence . . . ," including using searches in "inter-competitor" communications and then finding toll records in proximity, and "investigative steps" he viewed as "appropriate") and therefore neither helpful nor necessary. *See id.* at 10-12.

Second, the Court already knows how DOJ created the summary exhibits: Rachel Evans, a DOJ paralegal, testified that the trial attorneys and not the agents prepared the summary exhibits, and she was personally responsible for ensuring their accuracy. Nov. 23, 2021 Rough Tr., 105:15-23, 106:6–107:1-12, 146:1-10, 162:3-9. Lawyers' selections of documents to create summary exhibits for trial, even with the assistance of an agent, *is not investigational*. This Court already recognized as much: "[E]ven if an agent put [a summary or demonstrative] together, once again, the agent doesn't have any personal knowledge of it" and "summary exhibit[s] of, say, co-conspirator hearsay e-mails . . . doesn't seem to be any type of investigation." Trial Tr. (Vol. 8) at 1626:5-17.

Couching the creation of summary exhibits by trial attorneys as the "investigative steps" of an agent is disingenuous and a highly prejudicial attempt to mislead the jury. *See, e.g.*, *United States v. Cass*, 127 F.3d 1218, 1224 (10th Cir. 1997) (finding permissible use of overview or summary testimony stretched "beyond the breaking point" where the government's witness, under the guise of "outlining" the case, "simply repeat[ed] on the stand what other witnesses [had said] and justif[ied] the practice by arguing that the statements [were] introduced to explain how they went about their investigation"). Through SA Taylor, DOJ is attempting to give "official imprimatur to certain evidence" and tell the jury what inferences it should draw, as

prohibited by *Brooks*, 736 F.3d at 930. The Court has already rejected DOJ's gambit more than once, and it should reject this thinly veiled request for reconsideration once again.

Finally, DOJ claims that SA Taylor's testimony on specific exhibits *to explain summary exhibits* is not summary testimony, but instead admissible "lay opinion testimony" on "voluminous materials in a complex investigation."[14] Dkt. 977 at 13-14. There is no rule that conditions admissibility of Rule 701 testimony on the amount of paper collected in a case, and there is no such holding in *United States v. Marquez*, as relied upon by the government. 898 F.3d 1036, 1049 (10th Cir. 2018) (finding no abuse of discretion in the admission of lay opinion testimony from agent because he *personally listened* to hundreds of hours of *intercepted calls* about the distribution of methamphetamine and *surveilled* drug transactions). *Marquez*, in fact, reiterated that the purpose of Rule 701 is "to exclude testimony where the witness is no better suited than the jury to make the judgment at issue, providing assurance against the admission of opinions that merely tell the jury what result to reach." *Id.* (quoting *Brooks*, 736 F.3d at 931 n.2). The jury is just as, if not more, competent than SA Taylor to decide "whether there was any

---

[14] DOJ argues that SA Taylor's testimony will be based on "his knowledge and experience gathered from years of working on the instant investigation in the chicken industry." Dkt. 977 at 13. Any "testimony based on [the witness's] specialized training cannot simply be recharacterized as lay opinion testimony and admitted under Rule 701." *See United States v. Banks*, 262 F. App'x 900, 907 (10th Cir. 2008). Further, courts have specifically stated that proof of a defendant's guilt based on the totality of information gathered in an investigation does not satisfy the "personal perception" Rule 701(a) requirement. *See United States v. Grinage*, 390 F.3d 746, 748-51 (2d Cir. 2004) (rejecting such evidence as lay opinion under Rule 701), *cited with approval in United States v. Chavez*, 976 F.3d 1178, 1207 (10th Cir. 2020); *United States v. Dukagjini*, 326 F.3d 45, 53-56 (2d Cir. 2003) (rejecting receipt of such evidence as expert opinion under Rule 702). "The 'traditional objective' of the rule [701] is . . . to afford the trier of fact 'an accurate reproduction of the event' at issue.'" *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) (internal quotation omitted). Neither agent's testimony satisfies that test.

evidence of bid rigging or price fixing" in this case. Dkt. 977 at 11. The Court has already ruled as much, and DOJ cannot point to any compelling reason to revisit that decision. Dkt. 604 at 4 (barring agents' testimony about "the meaning of a defendant's conduct or communications").

Resorting to *United States v. Ray*, 370 F.3d 1039, 1046-47 (10th Cir. 2004), DOJ suggests SA Taylor's proposed testimony is permissible because its case is really hard—SA Taylor will help the jury "by providing the context of the investigative steps that were taken and why." Dkt. 977 at 14. Once again, whatever "context" and "steps" SA Taylor might testify about are irrelevant to any fact in issue and argumentative. DOJ cannot use "investigative steps" testimony to circumvent (1) this Court's written and oral rulings; (2) the fact neither SA Koppenhaver nor SA Taylor have personal knowledge regarding any evidence in the case; and (3) its choice to admit the bulk of its evidence without a witness.

Even so, *Ray* does not help DOJ; the crux of *Ray* is the possible prejudice to criminal defendants in allowing summary evidence. 370 F.3d at 1047. Testifying government agents, describing hundreds of documents, amounts to prejudicial closing arguments in the middle of trial. Trial Tr. (Vol. 7) 1387:16-21 (ruling that the agents will "not going to be giving a closing argument."). DOJ's opening and closing statements are the only permissible vehicles for "helping" the jury to understand voluminous evidence and preview the government's theory of each defendant's culpability. *See Garcia,* 413 F.3d at 213-14. The Court should reject DOJ's attempt to use agent testimony as a third and fourth bite at that apple.[15]

---

[15] If either SA Koppenhaver or SA Taylor is permitted to testify, Defendants reserve the right to examine them on certain text messages exchanged between them, and which are subject of the government's "notice" filed October 30, 2021. Dkt. 759.

Dated: February 7, 2022

Respectfully submitted,

s/ John A. Fagg, Jr.
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

s/ Michael F. Tubach
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

s/ Richard K. Kornfeld
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

s/ Michael S. Feldberg
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

s/ Bryan Lavine
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

s/ Elizabeth Prewitt
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

s/ James A. Backstrom
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

s/ Mark A. Byrne
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

s/ Craig Allen Gillen
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

s/ Wendy L. Johnson
Wendy L. Johnson
REECE MOORE PENDERGRAFT, LLP
Attorney for Rickie Patterson Blake
5519 Hackett Rd. Suite 300
Springdale, AR 72762
479-439-2705
Email: wjohnson@rmp.law

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  February 7, 2022                          *s/ Laura Carwile*

Laura Carwile

# EXHIBIT A