**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.  JAYSON JEFFREY PENN,
2.  MIKELL REEVE FRIES,
3.  SCOTT JAMES BRADY,
4.  ROGER BORN AUSTIN,
5.  TIMOTHY R. MULRENIN,
6.  WILLIAM VINCENT KANTOLA,
7.  JIMMIE LEE LITTLE,
8.  WILLIAM WADE LOVETTE,
9.  GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,**

      Defendants.

---

**UNITED STATES' OPPOSITION TO THE DEFENDANTS' JOINT MOTION TO
EXCLUDE THE GOVERNMENT'S SUMMARY EXHIBITS**

---

The government respectfully urges the Court to reject the defendants' sixth

attempt to exclude the government's summary exhibits, which is in large part irrelevant

or moot due to the defendants' misunderstanding of what summaries the government

intends to offer. *See* Defendants' Joint Motion to Exclude the Government's "Summary"

Exhibits (hereinafter "Defendants' Motion"), ECF No. 1081. The summary charts at

issue are in no way new or materially different, despite contentions by the defendants

that as much as an alteration in cell height serves as a ground for exclusion. ECF No. 1081 at 9.

In fact, the government's updated summary exhibits are nearly identical to what the Court admitted in the prior trial, with minor modifications in formatting and with the addition of several admissible pieces of evidence that the government intends to elicit in the re-trial. The government can, and should, be able to alter its presentation of evidence in the re-trial, and has provided defendants advance notice of its summary exhibits so that they can adequately prepare for the cross examination of Ms. Rachel Evans, the sponsoring witness. Defendants have made no factual or legal arguments that should alter the Court's prior conclusions that the summaries will be helpful to the jury, summarize admissible evidence, and hence are admissible themselves.

## Background

In the first trial, the government admitted twenty summary exhibits that put into context some of the government's evidence, including phone calls, text messages, and emails. As this Court found, the summary exhibits at issue—which were adapted throughout the past trial based on evidentiary rulings—are admissible because the "underlying evidence is voluminous and cannot be conveniently examined in court." ECF No. 741 at 5 (Order).

The summary exhibits were first provided to the defendants in draft form on October 6, 2021. Since then, the defendants have had ample opportunity to review and challenge the admissibility of these summary exhibits—as evidenced by the fact they have now briefed their challenges on at least six occasions. *See* Defs. Joint Opp. to the

Government's Omnibus Mots. in Limine, ECF No. 563; Defs. Response to the United States' Mot. In Limine Regarding Summary Evidence, ECF No. 564; Defs. Joint Mot. to Exclude the Government's Proposed Summary Exhibits, ECF No. 715; Defs. Joint Reply in Support of Mot. to Exclude, ECF No. 728; Defs. Mot. to Exclude Newly-Identified Summary Exhibits, ECF No 760, Defs. Joint Mot. to Exclude the Government's "Summary" Exhibits, ECF No. 1081.

On February 10, 2022, in preparation for the re-trial, the government provided each defendant a flash drive containing all exhibits on the government's exhibit list, including the updated summary exhibits, and notified the defendants that the summary exhibits contained various additions or changes. On February 18, 2022, the defendants filed a motion with the Court to exclude the government's summaries in their entirety, *see* ECF No. 1081.

Contrary to the defendants' assertions, ECF No. 1081 at 3-4, the government does not intend to introduce every exhibit included on its exhibit list during the re-trial. The government does, however, intend to introduce the summary exhibits the Court previously admitted in the first trial, with slight revisions. As a courtesy, in an email to the defendants on February 13, 2022, the government notified the defendants of precisely what changed in the summary exhibits compared to what was admitted in the first trial. *See* Attachment B at 3-4. These minor changes include the modification of the color-coding, addition of email subject lines, and addition of entries for a small number of exhibits contained in the government's supplemental *James* log (which was then pending) or which the government otherwise intends to admit in the re-trial.

On February 21, 2022, the government sent the defendants an updated and nearly final set of summaries, which are reflected in Attachment A. Along with updated summaries, the government again informed the defendants of precisely what changed as compared to the prior version shared with the defendants, as described in the government's email on February 13, 2022. *See* Attachment B. The additional pre-trial alterations were made largely in response to recent rulings by the Court on the admissibility of certain documents (such as the Court's February 14, 2022 ruling on the government's supplemental *James* log, *see* ECF No. 1050); to add call durations as requested multiple times by the defendants, *see*, *e.g.*, ECF No. 715 at 8; and to add GX 1030, putting the defendants on notice of the government's intent to include the document should it be admitted by the Court following testimony in the re-trial.[1]

The summary exhibits will be introduced in about a week's time, alongside the testimony of the sponsoring witness, Ms. Rachel Evans, who is currently anticipated to testify the week of February 28, 2022. The defendants will have an opportunity to cross examine her once again on all of the summary charts. Some of the charts will be offered at the conclusion of her testimony, but others will be offered only after all of the underlying exhibits are admitted during the testimony of other persons with knowledge. As such, the current version of the summary exhibits (as attached in Attachment A and shared with the defendants) are near final. After Ms. Evans testifies, the only anticipated changes will be to remove certain limiting instructions based on the Court's rulings, or to

---

[1] In addition, the conspiratorial nature of additional communications has come to the government's attention during preparation of its new witnesses, and as such certain phone calls have been added to the summaries.

remove any exhibit ruled inadmissible. If any additional minor changes are made, the government will, as in the last trial, notify the defendants of them.

## I.     The Defendants' Argument is Based on a Factual Misunderstanding.

The defendants' arguments in their joint motion are based in large part on a factual misunderstanding: The exhibits on its exhibit list do not represent what the government currently intends to introduce in its case-in-chief. Just as the government anticipates the defendants do not intend to admit the over 7,800 exhibits contained on their exhibit list, the government's exhibit list is intended to put the defendants on notice of evidence the government *may* seek to offer at trial. In the scenario of a re-trial, the list is even more inclusive—for the sake of completeness and to reduce confusion, the government's exhibit list and flash drive includes *all* exhibits that were marked in the previous trial, as well as new exhibits.

With respect to the summaries, the government intends to use only summaries that were admitted in the last trial, with slight revisions. As noted above, revisions since the last trial were described to the defendants on February 13 and again on February 21.

As such, the defendants' challenges are inapplicable as to GX 9-2, 10-3-1, 10-5, 10-8, 10-9, 10-10, 10-11, 14-4, 14-5, 14-6, 14-7, 14-8, 14-9, 16-2, 90-11, and 90-12—none of which the government intends to introduce at the re-trial. The defendants' claim, then, that the government is attempting somehow to "contravene the Court's prior orders," ECF No. 1081 at 4, is factually inaccurate, based on a misunderstanding of the purpose of an exhibit list, and ignores the government's previous clear representations

regarding these exhibits. *See* ECF No. 722 (notifying defendants of the government's intent to use certain exhibits merely as demonstratives).

### II.   The Summary Exhibits at Issue are Admissible Based on the Court's Prior Rulings.

Correcting for the defendants' factual misunderstanding, the only remaining summaries for the Court's consideration are the summaries exhibits already ruled on and admitted in the prior trial: GX 1-1, 2-1, 3-1, 4-1, 5-1, 7-1, 9-1, 10-1, 10-2, 10-3, 14-1, 14-2, 14-3, 16-1, 17-1,18-1, 18-3, 20-1, and 90-10.[2] Nothing about the updates made by the government affects the admissibility of these exhibits.

First, although not required by the law, the government has provided draft updates and even detailed revisions thereto for defendants as the re-trial approached. As described above, the government had made various additions to the summary charts after the first trial, based on evidence it had a good faith basis to believe would be admitted against all ten defendants in the re-trial. *See* Attachment A (current version of the summary charts). Even if there were a requirement that defendants be afforded weeks to review for accuracy a handful of changes in summary exhibits (and there is not), the meticulous inspection of the summaries reflected in the defendants' motion simply proves that they have already had an opportunity to do so.

In addition, despite minor changes to account for the government's change in presentation of evidence in its case-in-chief—which is to be expected in any re-trial— none of the summary exhibits are "substantially revised" such that their admissibility

---

[2] The government has not made further changes to GX 90-10 since the prior trial.

should be affected. The summaries remain admissible, as all the Court needs to consider when deciding whether to admit summary exhibits is: (1) whether the summaries "aid[] the jury in ascertaining the truth," and (2) whether the defendants are possibly prejudiced, "looking specifically to whether the preparer of the chart was available for cross-examination." *United States v. Ray*, 370 F.3d 1039, 1046-47 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005) (internal quotation omitted). A summary exhibit may also contain evidence favoring one party as long as it does not mislead the jury. *United States v. Whitefield*, 590 F.3d. 325, 364-65 (5th Cir. 2009).

The government's summary exhibits, as with earlier versions, continue to be based on objective evidence and there is minimal (if any) risk that the jury will be misled, especially as the defendants will have an opportunity to cross examine the sponsoring witness. *See, e.g., United States v. White*, 737 F.3d 1121, 1135 (7th Cir. 2013) (rejecting omission of not incriminating entries where opposing party is free to make the point on cross-examination); *United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979) (rejecting challenge to a summary that "appears to present merely an organization of some of the undisputed objective evidence in terms of the relevant counts of the indictment"). And the defendants have had ample time to scrutinize the changes and to prepare for cross examination, as their detailed challenges to each summary reveals—and therefore the defendants are not prejudiced by the revisions.

III.     **The Summary Exhibits are Timely and Must be Updated Based on What Occurs at Trial.**

The defendants argue that the government failed to provide summary exhibits in a timely manner, even though the government has shared with the defendants largely

the same summary exhibits (save minor alterations), for nearly five months. As noted above, in preparation for the re-trial, the government shared updated summary exhibits (involving only minor changes) with the defendants as a courtesy on February 10 and on February 21—and expects to share changes to the summary exhibits if there are any additional relevant evidentiary rulings.

There is no requirement that summary exhibits be finalized and shared with defendants by a certain date—and the defendants do not cite any law to the contrary. Such a requirement would be unworkable, as summary exhibits need be responsive to evidentiary rulings at trial. *See, e.g.*, *United States v. Dashner*, No. 12-CR-00646-SI-1, 2015 WL 3660331, at *7 (N.D. Cal. June 2, 2015) (permitting the government to "supply defendant drafts of the summaries as soon as they are available" because "the summaries will not be finalized until shortly before their [witness'] testimony because they will incorporate evidence admitted at trial."). Although the government's exhibits are now near final, the Court should not credit the defendants' general complaints that summary exhibits are somehow "substantially revised," ECF No. 1081 at 3, each time they are changed to accord with a court ruling, trial developments, or to address the defendants' concerns.

Accordingly, nothing about the *substance* of the revisions should change the admissibility of the summary charts themselves, unless the underlying exhibits are not admissible or the inclusion is misleading. This is especially the case where the government's anticipated revisions will be minor.

Moreover, if the Court were to adopt the defendants' restrictive view of a deadline, the defendants themselves are the greatest transgressors. The defendants have on numerous occasions stated their desire to enter their own summary exhibits into evidence. *See, e.g.*, ECF No. 934 at 1045 (Defendants' Exhibit List, Exhibit H-314 noting "Any FRE 1006 Exhibits"); *id*. at 1116 (I-533 "Defendants' Summary Exhibits"); C. Tr. Nov. 10, 2021 at 431:25-432:3 (counsel for defendant Mulrenin: "there are going to be various summary charts that are going to put in"). Yet, the government has, to date, not received a single one. The defendants cannot seek to bind the government to a finalized form of summary exhibits under a "rule" they do not purport to follow.

### IV.    Color-Coding Summaries is a Proper Organizational Aid for the Jury.

The defendants again attack the color-coding scheme chosen by the government as improper, but this attempt at reconsideration should be denied. The defendants contend that color-coding is misleading and argumentative—largely the same complaint they made at the prior trial. But this exact argument has already been rejected by this Court. *See* ECF Nos. 760 (Motion to exclude), 774 (Government's Response), 781 (Court's Order). As the Court explained, "[c]ontrary to defendants' assertion, the government has used color-coding as an organizational aid corresponding to categories of communications, rather than impermissible highlighting to draw the jury's attention to any particular emails calls, or texts." ECF No. 781 at 4 (citation omitted).

The revised color-coding of the summaries does not alter this conclusion. The color-coding is now based on the participants to each message, such that communications between suppliers and buyers of chicken are in blue; conversations

between two individuals at the same poultry supplier are in pink; and conversations between individuals at different poultry suppliers are in orange. This color-coding scheme, just like the prior one, does not impermissibly draw the jury's attention to particular incidents. Nor is the scheme argumentative. Contrary to the defendants' claim that "all purportedly conspiratorial communications" are "in colors commonly associated with warnings, errors, danger, or other wrongdoing" (supposedly pink), ECF No. 1081 at 6, plenty of statements included for context are in that same color, such as "what does pete email mean?" between two employees of Pilgrim's Pride in GX 18-3, or, "You get this?" from Mr. Carl Pepper to defendant Mulrenin in GX 7-1. Color-coding remains merely a useful organizational aid for the jury in a complex case involving many co-conspirators, customers, and third parties.

## V.   The Government May Select What Evidence to Include in its Summary Charts, So Long as They Are Not Misleading or Argumentative.

The defendants argue revisions are "either inappropriate or . . . lacks any good faith basis," ECF No. 1081 at 7, with regard to certain summaries. But none of these arguments have merit.[3]

*First*, the defendants fault the government for including "irrelevant" or "misleading" exhibits. At times, the defendants challenge additions of exhibits that— while temporally related—do not specify the same customer as some of the other

---

[3] Defendants note the removal of limiting instructions in GX 7-1 and GX 20-1. This was due to a formatting error. Revised versions are reflected in Attachment A.

underlying exhibits in a summary.[4] Oddly, the defendants also seek to exclude additions

of exhibits that—while related to the same customer—contain events that occur nearly

two months apart. ECF No. 1081 at 11.[5] But the challenged summary charts

(specifically, 14-1 and 14-3) place exhibits in temporal context, rather than context

specific to a particular customer or negotiation, as the government has the right to do.

While some exhibits within a summary chart may specify other victimized customers,

this does not alter the relevance of the additions. *See United States v. Ho*, 984 F.3d

191, 209 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2862 (2021) (rejecting defendant's

challenge to a summary chart which "provided timelines of certain text messages,

emails, and other documents").[6]

Indeed, putting these exhibits in temporal context aids the jury in understanding

the defendants' conspiratorial acts in the same approximate time frame. For example, a

challenged exhibit, GX 3037, includes a communication by defendant Penn occurring

less than a month before KFC opened its bidding process (as shown in the very next

---

[4] For example, the defendants fault an addition to GX 14-1—the addition of GX 3037—
because the addition did not relate to a customer (KFC) discussed in other parts of GX
14-1.

[5] The defendants challenge an addition to GX 14-3—the addition of GX 1722—as
"unrelated to the other materials' summarized' in the chart," ECF No. 1081 at 11,
because it was "dated nearly two months after the preceding entry in the chart" and "is
not connected in any way to the preceding entries" because it references Case Foods, a
competitor who is "not referenced in any other entries on the chart," *id*. at 12.

[6] The defendants also take issue with the addition of GX 1446 in GX 14-3 as
"misleading and argumentative." ECF No. 1081 at 11. This specific complaint about GX
1446—an email in which defendant Penn asks a co-conspirator "Do we have TSN price
idea?"—is moot, as the government has removed the email in its revised summary
charts based on the Court's ruling on the supplemental *James* log.

entry in GX 14-1).[7] And another challenged exhibit, GX 1722, shows communications occurring less than two months after the defendants gathered competitively sensitive information related to bidding for KFC—and shows defendants Penn and Austin once again trying to "find out where everyone [competitors] went" on their bids. It is of no moment that defendant Austin references a competitor (Case Foods) that does not otherwise appear in the exhibit. The defendants fail to explain (1) how the addition of the exhibits, which shed light on the context of defendant Penn's and defendant Austin's conspiratorial communications, are irrelevant to the rest of the information in GX 14-1 and 14-3; or (2) how referencing multiple customers or other competitors misleads or prejudices the defendants.

*Second*, even though the government notified the defendants of specific revisions to the summaries as a courtesy, the defendants take issue with the specificity of disclosure. For example, the defendants complain with respect to GX 10-1 that, although the government "disclosed that it added calls on August 7 and 11, 2014," the government did not "disclose that the additional calls on August 7, 2014 . . . came from an exhibit not included on the previously admitted chart." ECF No. 1081 at 9. The defendants' point seems to be that, although the government said it added new calls and pointed defendants to the precise calls added, it did not separately explain that it added a citation to an exhibit number next to those calls. But it is only logical to assume

---

[7] GX 3037 shows defendant Penn forwarding a message from Ms. Brenda Ray, another Pilgrim's employee; in his forwarded message, defendant Penn notes to a co-conspirator, "FYI. Do not fwd. not exactly a legal conversation." Ms. Ray's initial message, which defendant Penn forwarded, says a "friendly competitor" thanked Pilgrim's for "taking the lead" on taking contract pricing up."

that the addition of calls that were not previously on the summary chart might require citation to exhibits that also were not previously on the summary chart.[8]

*Finally*, the defendants challenge the addition of certain entries to GX 10-3, 2-1, and 3-1 because the Court denied the governments' motion to add documents to the government's supplemental *James* log. The Court's denial, however, occurred after the government sent its draft summary exhibits to the defendants. The defendants' challenges are now moot; documents the Court denied from the government's supplemental *James* log have been removed, as reflected in Attachment B.

In light of the foregoing, the Court should reject the defendants' motion to exclude the government's summary exhibits.

Dated: February 22, 2022          Respectfully submitted,

*/s/ Yixi (Cecilia) Cheng*
YIXI (CECILIA) CHENG
MICHAEL KOENIG
HEATHER CALL
PAUL TORZILLI
CAROLYN SWEENEY
Antitrust Division
U.S. Department of Justice
Washington D.C. 20530
Tel: (202) 705-8342
Email: yixi.cheng@usdoj.gov
*Attorneys for the United States*

---

[8] The defendants also make granular complaints about formatting without explaining how they can possibly be prejudiced. For example, with regard to GX 10-1, the defendants complain that a cell entry was "expanded to fill half the page." ECF No. 1081 at 9. But this formatting change automated by Microsoft Excel—which heightens cell sizes beyond a certain point—simply cannot be ground for exclusion. Nor can it affect the defendants' ability to cross examine Ms. Evans on the accuracy of the summary chart.